UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>IMRAM AZAM,<br><br>                              Defendant. | Case No.:  19-MJ-23019-AGS-JLS<br><br>**ORDER AFFIRMING JUDGMENT OF MAGISTRATE JUDGE**<br><br>(ECF No. 43) |

Presently before the Court is Defendant Imram Azam's Notice of Appeal ("Not.," ECF No. 43) to the District Court, which seeks review of Magistrate Judge Andrew G. Schopler's Final Judgment ("Judg.," ECF No. 44) finding Defendant guilty of one count of attempted illegal entry by an alien in violation of 8 U.S.C. § 1325(a)(1). The notice of appeal is timely, and this Court has jurisdiction pursuant to 18 U.S.C. § 3402. In support of the appeal, Defendant filed an Opening Brief ("Open Br.," ECF No. 62). The United States filed an Answering Brief ("Answer," ECF No. 69), and Defendant responded with a Reply ("Reply," ECF No. 71). Having reviewed the Parties' briefing and the law, the Court **AFFIRMS** the judgment of the Magistrate Judge.

/ / /

# BACKGROUND

On July 24, 2019, Border Patrol agents spotted a group of people crawling through a culvert located in a remote area roughly 200 yards north of the U.S.-Mexico border and nine miles west of the closest port of entry in Calexico, California. ECF No. 1 at 3; ECF No. 15-2 at 4; ECF No. 53-4 at 14:5–12, 18:13–16. The area is known for illegal migrant crossings. ECF No. 53-4 at 12:10–14:4; Open Br. at 17. Border Patrol Agent Jacob Castillo was dispatched to the scene, where he encountered Defendant with four other individuals, all of whom were attempting to hide from Agent Castillo, ECF No. 53-4 at 20:3–8, and were "wet from head to toe, wearing life jackets," *id.* at 16:21–25, 32:13–15. The only body of water in the area is an irrigation canal called the All-American Canal, *id.* at 7:13–8:2; 17:1–3, in which recreational swimming is prohibited, *id.* at 11:12–15. And while people occasionally fish in the All-American Canal, *id.* at 11:4–11, neither Defendant nor any other member of the group had any fishing gear, *id.* at 20:20–21:4.

Agent Castillo transported the group to another area for further questioning. *Id.* at 20:9–19. While the other four individuals were able to communicate with Border Patrol agents in Spanish, there was a clear language barrier between Agent Castillo and Defendant. *Id.* at 20:9–13, 28:3–11, 31:4–22. When asked where he was from, Defendant "stayed blank." *Id.* at 36:6–9. Agent Castillo then asked, "Punjabi?" *Id.* Defendant responded, "Yes, Punjabi." *Id.* Defendant was subsequently arrested and transported to the El Centro Border Patrol Station, where he provided further statements to Border Patrol agents. ECF No. 15-2 at 5.

On July 25, 2019, the Government charged Defendant with one count of attempted illegal entry by an alien in violation of 8 U.S.C. § 1325(a)(1), a misdemeanor. *See* Complaint ("Compl.," ECF No. 1). Defendant "filed a variety of pretrial challenges," including a motion to dismiss for failure to allege all elements of the charged offense, a motion to dismiss because Defendant's prosecution violated equal protection and due process, and a motion for a jury trial. ECF No. 15; Open Br. at 5. Magistrate Judge Schopler denied each of those motions at a hearing on August 23, 2019. *See* ECF No. 25;

ECF No. 53-2 at 3:4–6:23, 39:5–42:17.  Defendant also submitted a motion to suppress, arguing that the statements Defendant made in the field to Agent Castillo and those he made at the El Centro Border Patrol Station following his arrest should be suppressed.  ECF No. 15 at 30–37.  That motion was granted in part and denied in part, with Defendant's field statement ("Yes, Punjabi") provisionally admitted and his post-arrest statements suppressed.  ECF No. 50 at 13:22–14:10.  Magistrate Judge Schopler later determined that Defendant's field statement was admissible.  ECF No. 53-4 at 99:21–100:1.

Following a bench trial, Magistrate Judge Schopler found Defendant guilty of the crime charged and sentenced him to time served.  Judg. at 1–2; *see also* ECF No. 53-4 at 99:18–20.  Judgment was entered on October 9, 2019, *id.*, and this appeal was timely filed the following day, Not.; *see* Fed. R. Crim. P. 58(g)(2)(B) (establishing 14-day timeframe for appealing a magistrate judge's judgment of conviction or sentence).

## LEGAL STANDARD

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."  18 U.S.C. § 3402.  "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(d).  Accordingly, a magistrate judge's factual findings are reviewed for clear error, *see United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001).  Under the clearly erroneous standard of review, "findings of fact must be accepted as true unless upon review of the record we are left with the definite and firm conviction that a mistake has been committed."  *United States v. Wadsworth*, 830 F.2d 1500, 1506 (9th Cir. 1987).  On the other hand, "the magistrate's legal conclusions, including challenges to the sufficiency of evidence and questions of statutory interpretation, are reviewed de novo."  *United States v. Zepeda-Rodriguez*, No. 19-MJ-24357-LL-TWR, 2022 WL 1289691, at *3 (S.D. Cal. Apr. 29, 2022).  On de novo review, the Court asks whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000) (internal citations omitted).

## DISCUSSION

Defendant raises five challenges to the conviction. First, Defendant argues that the Complaint against him was constitutionally deficient because it "failed to allege that [he] had the purpose or conscious desire to enter the United States without permission." Open Br. at 3. Second, Defendant contends that he "had the right to a jury trial given the serious consequences of a § 1325(a)(1) conviction for his asylum claim." *Id.* Third, according to Defendant, his "admission that he spoke Punjabi was insufficient to establish the element of alienage beyond a reasonable doubt." *Id.* Fourth, the Magistrate Judge erred in declining to suppress Defendant's field statements. *Id.* at 17–19. Lastly, Defendant claims that this District's "Streamline Court" violates equal protection and due process. *Id.* at 3. The Court will address each of these arguments in turn.

### I. Sufficiency of the Charging Document

A charging document must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "A charging document 'that tracks the words of the statute violated is generally sufficient' to allege the elements of an offense, but 'implied necessary elements, not present in the statutory language, must be included in an indictment.'" *United States v. Ramos-Moran*, No. 19CR2984-LL, 2019 WL 4393670, at *3 (S.D. Cal. Sept. 13, 2019) (quoting *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) (citations omitted)).

In *United States v. Resendiz-Ponce*, the Supreme Court explained that there are two constitutional requirements for an indictment: (1) it must "'contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend'"; and (2) it must "'enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117). In *Resendiz-Ponce*, the defendant was charged with attempted illegal reentry in violation of 8 U.S.C. § 1326(a). *Id.* at 104. The indictment stated that

"[o]n or about June 1, 2003," the defendant "attempted to enter the United States of America at or near San Luis in the District of Arizona." *Id.* at 108. Despite the terseness of the indictment, the Supreme Court held that it was constitutionally sufficient because the indictment's use of the word "attempt" "encompasse[d] both the overt act and intent elements" of the crime, and the "specification of the time and place of [defendant's] attempted illegal reentry" provided him with notice and "ample protection against the risk of multiple prosecutions for the same crime." *Id.* at 107–08.

Here, Defendant argues that the complaint "charged him with attempted illegal entry but failed to allege that he had 'the purpose, i.e., conscious desire, to enter the country without permission.'" Open Br. at 9. The Government counters that the complaint was constitutionally sufficient under *Resendiz-Ponce*, and that there is no requirement that charging documents include the "conscious desire" language proposed by Defendant. Answer at 2–4.

The Court finds that the Complaint satisfied constitutional requirements. The Complaint states that "[o]n or about July 24, 2019, within the Southern District of California, defendant . . . , being an alien, attempted to enter the United States at a time and place other than as designated by Immigration Officers, in violation of Title 8, United States Code, Section 1325(a)(1); a misdemeanor." Under *Resendiz-Ponce*, the Complaint's use of the word "attempted" encompasses the elements of the crime charged, and the time-and-place specifications were sufficient to place Defendant on notice of the crime charged and protect him from multiple prosecutions. 549 U.S. at 107–08; *see also Ramos-Moran*, 2019 WL 4393670, at *3 ("[I]n more recent (albeit unpublished) decisions following *Resendiz-Ponce*, the Ninth Circuit has found the use of the word 'attempt' in a charging document adequately puts a Defendant on notice of the intent component of a charged offense.").

Moreover, there is no requirement that that a charging document for a violation of 8 U.S.C. § 1325(a)(1) allege that a defendant have the "conscious desire" to enter the country without permission. Defendant relies on *United States v. Davalos-Lopez*, 773 F.

1  App'x 967, 968 (9th Cir. 2019), to support his argument, but that case is inapposite. In
2  *Davalos-Lopez*, the issue was whether the indictment was deficient because it did not
3  "define the distinct legal meaning of 'entry.'" *Id.* at 968. That case did not purport to
4  change the constitutional requirements of a charging document. Indeed, the Ninth Circuit
5  in *Davalos-Lopez* reiterated the general rule that indictments setting forth the offense in the
6  words of the statute itself generally are sufficient "'as long as those words . . . fully,
7  directly, and expressly, without any uncertainty or ambiguity, set forth all the elements
8  necessary to constitute the offence intended to be punished.'" *Id.* (quoting *Hamling*, 418
9  U.S. 87, 117). Because the indictment in *Davalos-Lopez* "did just that," it was sufficient.
10 Likewise, here, the Complaint sets forth the offense in the words of the statute itself.
11 Section 1325(a)(1) applies to "[a]ny alien who . . . enters or attempts to enter the United
12 States at any time or place other than as designated by immigration officers." 8 U.S.C.
13 § 1325(a)(1). The Complaint, meanwhile, charged Defendant with "attempt[ing] to enter
14 the United States at a time and place other than as designated by Immigration Officers."
15 Because the Complaint mirrors § 1325(a)(1)'s language and, as discussed above, sets forth
16 all necessary elements of the offense through its inclusion of the word "attempt," the
17 Complaint satisfied constitutional requirements.
18       In light of the above findings, the Court denies Defendant's appeal on this ground.
19 **II.    Right to Jury Trial**
20       The Sixth Amendment guarantees to certain criminal defendants "the right to a
21 speedy and public trial, by an impartial jury." U.S. CONST. amend VI. "It is well
22 established," however, "that the Sixth Amendment, like the common law, reserves this jury
23 trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes
24 or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Lewis v.*
25 *United States*, 518 U.S. 322, 325 (1996) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159
26 (1968)). "[T]o determine whether an offense is petty, [courts] consider the maximum
27 penalty attached to the offense." *Id.* at 326. "An offense carrying a maximum prison term
28 of six months or less is presumed petty, unless the legislature has authorized additional

statutory penalties so severe as to indicate that the legislature considered the offense serious." *Id.*

First-time violators of § 1325(a)(1) are subject to a fine or imprisonment "not more than 6 months, or both." 8 U.S.C. § 1325(a)(1). Plaintiff concedes that the section's six-month statutory maximum "creates a presumption that the offense is 'petty' for Sixth Amendment purposes." Open Br. at 11. Nevertheless, Plaintiff contends that he "is facing deportation and denial of an asylum claim" if convicted of violating § 1325(a)(1), and that such repercussions, "combined with the custodial punishment," constitute severe punishment necessitating a jury trial. *Id.* The Government, on the other hand, argues that the collateral consequences of a § 1325 conviction do not necessitate a trial by jury. Answer at 5 (citing *United States v. Rodriguez-Rodriguez*, 742 F.2d 1194, 1195 (9th Cir. 1984)).

Here, the Court finds that Plaintiff was not entitled to a jury trial. Section 1325(a)(1) "does not provide for deportation [or denial of asylum] as a consequence of conviction," and neither deportation nor denial of asylum "automatically flow from a § 1325 conviction." *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1157 (S.D. Cal. 2019). Accordingly, neither deportation nor denial of asylum are penalties authorized by the legislature for violations of § 1325(a)(1). Indeed, Plaintiff concedes that a § 1325 conviction only raises the "*potential* to serve as both a discretionary and regulatory bar" to a grant of asylum. Open Br. at 12 (emphasis added). The mere possibility of deportation or denial of asylum, however, "cannot 'convert [a] border-crossing misdemeanor into a 'serious offense' for which the Sixth Amendment requires a trial by jury.'" *Ramirez-Ortiz*, 370 F. Supp. 3d at 1157 (quoting *Rodriguez-Rodriguez*, 742 F.2d at 1195); *see also United States v. Velasquez-Luna*, No. 18-MJ-11463-WQH, 2019 WL 338947, at *2 (S.D. Cal. Jan. 28, 2019) (concluding "that a collateral consequence of deportation after conviction [for violation of § 1325(a)(2)] does not authorize an additional penalty or indicate that the legislature considered this misdemeanor charge a serious offense subject to the jury trial right"); *United States v. Singh*, No. 19-CR-3623 BLM (DMS), 2020 WL 5500232, at *4

(S.D. Cal. Sept. 11, 2020) (concluding magistrate judge did not err in holding bench trial where defendant was charged with violation of 8 U.S.C. § 1325(a)(1)); *United States v. Campos-Atrisco*, No. 3:19-MJ-24683-KSC, 2020 WL 7181086, at *7 (S.D. Cal. Dec. 7, 2020) (finding violation of 8 U.S.C. § 1325(a)(1) "is a petty offense not subject to the jury trial provisions of the Sixth Amendment").

The Court denies Defendant's appeal on this ground.

### III. Proof of Alienage

Section 1325(a)(1) prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). "Alienage is a specific element of the offense, which the government must prove beyond a reasonable doubt." *United States v. Gonzalez-Godinez*, No. 19-CR-3506-BGS-DMS-1, 2021 WL 533517, at *2 (S.D. Cal. Feb. 12, 2021). An "alien" is "a person who is not a natural born or naturalized citizen or a national of the United States." *United States v. Rizo-Rizo*, 16 F.4th 1292, 1294 (9th Cir. 2021). It follows that, to demonstrate that a defendant violated § 1325(a)(1), the Government must prove beyond a reasonable doubt that the defendant was not a citizen of the United States at the time of the offense. *See United States v. Campos-Atrisco*, No. 19MJ024683KSCBAS1, 2021 WL 5332918, at *4 (S.D. Cal. Nov. 16, 2021), *aff'd*, No. 21-50263, 2023 WL 4758455 (9th Cir. July 26, 2023).

"Although the government may rely on a defendant's confession to meet its burden of proof, it has nevertheless been long established that, in order to serve as the basis for conviction, the government must also adduce some independent corroborating evidence." *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000). "To satisfy the corroboration requirement, the Government 'must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable.'" *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992)). That said, "alienage can be established without an admission from the defendant."

*United States v. Zepeda-Rodriguez*, No. 19-MJ-24357-LL-TWR, 2022 WL 1289691, at *4 (S.D. Cal. Apr. 29, 2022).

Defendant argues that the Magistrate Judge erred in finding Defendant guilty because the "mode of entry" evidence on which the Magistrate Judge relied—for example, that Defendant was found "in a culvert near the canal, wet, wearing a life jacket, in a remote area known for illegal entry, approximately 200 yards from the border"—was insufficient proof of Defendant's alienage. Open Br. at 15–16. The Government, on the other hand, counters that "independent third party evidence of the mode of entry is sufficient corroboration of an admission of alienage." Answer at 8 (emphasis in original). Accordingly, "the Magistrate Court had ample facts to find alienage," in the Government's view. *Id.* As the parties' dispute centers on the sufficiency of the evidence used to establish Defendant's alienage, the Court reviews the Magistrate Judge's findings de novo. *See United States v. Fomichev*, 899 F.3d 766, 773 (9th Cir.) ("When faced with a sufficiency of the evidence challenge, we must consider the evidence presented at trial in the light most favorable to the prosecution and then must determine whether the evidence is sufficient to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."), *opinion amended on denial of reh'g*, 909 F.3d 1078 (9th Cir. 2018).

Here, Defendant's field statements to Agent Castillo do not amount to an admission of alienage. When Agent Castillo asked Defendant where he was from, Defendant "stayed blank." *Id.* at 36:3–9. Agent Castillo then posed the question "Punjabi?" *Id.* Defendant responded "Yes, Punjabi." *Id.* The word "Punjabi" does not refer to a region (unlike the word "Punjab," *see Punjab*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/Punjab (last visited August 2, 2023) (defining "Punjab" as a "region of the northwestern Indian subcontinent in Pakistan and northwestern India")), but rather an ethnicity or language, *see Punjabi*, Merriam-Webster, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/Punjabi (last visited August 2, 2023) (defining "Punjabi" as "an Indo-Aryan language of the Punjab" or "a native or inhabitant

of the Punjab region of the northwestern Indian subcontinent"). Therefore, Defendant's statement could be interpreted either as an acknowledgement of his ethnicity or of his primary language. Neither admission, however, is equivalent to an admission of alienage. Even if Defendant had responded with "Punjab," the mere utterance of a region of the world does not necessarily imply the speaker is a citizen of some nation located in that region but not a citizen of some other nation. Semantics aside, the obvious language barrier between Defendant and Agent Castillo, *see* ECF No. 53-4 at 20:9–13; 23:17–22; 26:2–3, undermines any effort to stamp their exchange with a definitive interpretation.

Nevertheless, the Court finds that the Magistrate Judge did not err in concluding that the Government proved Defendant's alienage beyond a reasonable doubt. Agent Castillo testified that Defendant was first spotted 200 yards north of the U.S.-Mexico border in an area where he regularly encounters people illegally entering the country. ECF No. 53-4 at 12:10–14:4, 18:10–16. When Agent Castillo confronted Defendant, he was with four other individuals hiding in a concrete culvert running perpendicular to the All-American Canal, which lies just south of the culvert in which Defendant was located and just north of the border. *See id.* at 7:13–8:14, 14:5–16:15. Defendant and the other members of the group were wet and wearing life jackets. *Id.* at 16:21–25. Recreational swimming is prohibited in the All-American Canal, *id.* at 11:12–18, which is the only body of water in the vicinity of where Defendant was discovered, *id.* at 17:1–3. While people occasionally fish in the All-American Canal, neither Defendant nor any other member of the group had any fishing gear. *Id.* at 20:23–21:4. Defendant struggled to communicate in English, and he did not respond to Agent Castillo's questions in Spanish. *Id.* at 20:9–13, 23:17–22, 28:8–11. The other members of the group, on the other hand, could communicate with Agent Castillo in Spanish but did not appear to speak Punjabi. *Id.* at 26:11–23. Finally, Border Patrol Agent Derek Nowak testified that certain immigration databases did not contain any documents showing Defendant's right to enter or remain in the United States, nor did they contain any applications for entry. *Id.* at 37:14–40:24.

///

Construing this evidence "in the light most favorable to the prosecution," a "rational trier of fact" could have found Defendant's alienage beyond a reasonable doubt. *Corona-Garcia*, 210 F.3d at 978. The fact that Defendant was located within several hundred yards of the border in an area where Agent Castillo often encounters people illegally entering the country is strong circumstantial evidence of Defendant's alienage. The fact that Defendant and his cohorts were attempting to hide from Agent Castillo tends to show that Defendant knew he was not permitted to be in the country due to his alienage. Further, that Defendant was soaking wet and wearing a life jacket indicates that Defendant was heading north from the border (as the only body of water in the vicinity was north of the border and south of Defendant's location), and the prohibition on recreational swimming undermines any inference that Defendant was simply enjoying a swim in a remotely located irrigation canal. Moreover, that neither Defendant nor any other member of his group was equipped with fishing gear eliminates the possibility that Defendant was innocently fishing at the time of his arrest. The Court gives some weight to the fact that Defendant could not understand English or Spanish, and therefore apparently could not communicate in a meaningful way with the group of people with whom he was found. As the Magistrate Judge noted, such a language barrier is "certainly consistent with the entire group being a group of aliens who were entering the country illegally." *Id.* at 93. And while Defendant's statement of "Yes, Punjabi" cannot reasonably be interpreted as an admission of alienage, it is further circumstantial evidence that Defendant hailed from some nation other than the United States. Finally, the immigration databases' lack of documentation showing Defendant's right to entry or an application for entry is consistent with Defendant being an illegal alien.

The Court acknowledges the lack of Ninth Circuit authority holding that "alienage can be proven beyond a reasonable doubt based solely on the defendant's method of entry." *Zepeda-Rodriguez*, 2022 WL 1289691, at *4. The lack of such authority, however, does not imply that such evidence can never be sufficient to establish alienage. Moreover, it is not entirely clear to the Court what constitutes "method-of-entry evidence," as the Court was unable to locate binding authority defining the term. If the phrase literally refers to

how Defendant entered the country (i.e., climbing the border fence or swimming across a river), then it is clear to the Court that the Magistrate Judge relied on other evidence to find alienage; for instance, Defendant's attempt to hide from Agent Castillo and the fact that he was soaking wet and wearing a lifejacket when discovered.  If, on the other hand, the phrase more broadly refers to the circumstances surrounding Defendant's discovery, it nevertheless remains the case that the Magistrate Judge relied on other evidence in finding alienage; namely, that Defendant could not communicate in Spanish or English, as well as the immigration record-keeping systems' lack of documentation showing Defendant's right to enter the country.  Accordingly, under a strict or broad interpretation of the phrase "method-of-entry evidence," it is clear that such evidence was not the exclusive means by which alienage was proven here.  Finally, the Court notes that "circumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred." *United States v. Kelly*, 527 F.2d 961, 965 (9th Cir. 1976).  As stated above, the Court is satisfied that when the circumstantial evidence here is construed in the light most favorable to the prosecution, a rational trier of fact could have found alienage beyond a reasonable doubt.

Consequently, the Court denies Defendant's appeal on this ground.

## IV.  Admissibility of Field Statements

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established that "[t]he Constitution requires that a person be advised of certain rights if they are 'in custody' and 'subjected to interrogation.'"  *United States v. Carroll*, 102 F. Supp. 3d 1134, 1136 (N.D. Cal. 2015) (quoting *Miranda*, 384 U.S. at 467–68).  Under *Miranda*, a suspect is "in custody" if they have been "deprived of [their] freedom of action in any significant way."  384 U.S. at 444.  "To determine whether the suspect was in custody, we first examine the totality of the circumstances surrounding the interrogation."  *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).  "The subject of the inquiry is 'whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.'"  *United States v. Medina-Villa*, 567 F.3d 507, 519 (9th Cir. 2009) (quoting *United*

*States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981), *as amended* (June 23, 2009)). "Whether a person is 'in custody' for purposes of *Miranda* is a mixed question of law and fact warranting de novo review." *United States v. Galindo-Gallegos*, 255 F.3d 1154 (9th Cir. 2001).

"Of course, not all questioning by law enforcement officers triggers the warning requirement." *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). "A person detained during a *Terry* stop is generally not 'in custody' for *Miranda* purposes." *United States v. Ramos*, No. 21-10184, 2023 WL 2853516, at *1 (9th Cir. Apr. 10, 2023). "Generally, '[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons.'" *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) (quoting *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987)). "To lawfully conduct a '*Terry* stop,' an officer only needs a 'reasonable suspicion that criminal activity may be afoot.'" *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1157 (C.D. Cal. 2010) (quoting *United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009)). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).

During a *Terry* stop, law enforcement officers "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without first *Mirandizing* the detainee. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). The inquiry must be "reasonably related in scope to the justification" for the *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 29 (1968); *see also Berkemer*, 468 U.S. at 439. "If, however, the individual is asked questions going 'beyond a brief *Terry*-type inquiry,' the individual is entitled to *Miranda* warnings." *United States v. Davis*, 530 F.3d 1069, 1081 (9th Cir. 2008) (quoting *United States v. Kim*, 292 F.3d 969, 976 (9th Cir. 2002)).

///

13

19-MJ-23019-AGS-JLS

The Ninth Circuit has found that no *Miranda* warning is required during a *Terry* stop near the border so long as "questioning is limited to the suspect's name, date of birth, and citizenship status." *Ramos*, 2023 WL 2853516, at *1; *see also United States v. Arce-Rodriguez*, 697 F. App'x 497, 498 (9th Cir. 2017) ("During such temporary detentions at the border, it is not necessary to provide a *Miranda* warning before asking questions reasonably related to Appellant's immigration status."); *United States v. Cabrera-Alejandre*, No. CRIM. 06-CR-1437-L, 2007 WL 935599, at *1 (S.D. Cal. Mar. 20, 2007) ("Because the agents had reasonable suspicion to make a *Terry* stop, they were permitted to ask Defendant questions 'reasonably related in scope to the justification for their initiation.'" (quoting *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005))). It follows that, if Border Patrol agents have reasonable suspicion justifying a *Terry* stop near the border, they may ask the detainee questions related to their citizenship status prior to issuing a *Miranda* warning. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975) ("[W]hen an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion.").

Defendant argues that the Magistrate Judge erred by failing to suppress his field statement ("Yes, Punjabi"), as Defendant was in custody at the time of questioning and he had not yet been notified of his *Miranda* rights. *See* Open Br. at 17–19. The Government contends that Defendant's questioning did not require a *Miranda* warning because Defendant's "detention was the quintessential *Terry* stop near the border that the Ninth Circuit has repeatedly found non-custodial." Answer at 8–12 (internal quotations omitted).

Here, the Court finds that the Magistrate Judge did not err in admitting Defendant's field statement to Agent Castillo, as the statement was made during a non-custodial *Terry* stop. Agent Castillo's stop and inquiry was justified by reasonable suspicion of criminal activity. At the time Agent Castillo stopped Defendant, Defendant was some 200 yards north of the U.S.-Mexico border, nine miles away from the closest port of entry, hiding in a culvert with four other individuals, and was wet from head to toe and wearing a life

jacket. *Supra* pp. 10–11. Such circumstances clearly provided reasonable suspicion that Defendant had illegally entered the United States as an alien. Consequently, prior to issuing a *Miranda* warning, Agent Castillo was permitted to ask Defendant questions "reasonably related in scope to the justification" for the stop. *Terry*, 392 U.S. at 29. While it is difficult to determine the exact nature of the field communications between Agent Castillo and Defendant, it is clear that Agent Castillo was permitted to question Defendant about either his ethnicity or his mother tongue, as both questions relate to the justification for the stop. Defendant's ethnicity and primary language both speak to the region from which Defendant originally hails, and therefore relate to whether Defendant was an alien who had illegally entered the country. Accordingly, Agent Castillo need not have issued a *Miranda* warning prior to posing such a question, and the Magistrate Judge did not err in admitting Defendant's response.

  Defendant protests, arguing that at the time of the questioning, he was in custody for *Miranda* purposes. Defendant notes that after Agent Castillo discovered the group of suspected aliens hiding in the culvert, he transported them in his vehicle to a second area roughly "two to three minutes" north of the discovery location, where Border Patrol agents conduct "paperwork" related to stops of suspected aliens. *See* ECF No. 53-4 at 20:9–19; *id.* at 23:4–9; Open Br. at 17–18. It was at the second location that Agent Castillo "started asking questions of citizenship and alienage." ECF No. 53-4 at 20:9–19. Agent Castillo testified that he moved the group prior to questioning because the location where they were initially discovered is "very close to the border and [he's] had people run from that location"; smugglers may "hang out" in areas through which they lead groups of aliens; and "scouts will usually get up on the fence and throw rocks or do their best to keep [Border Patrol agents] from apprehending [suspected aliens]." *Id.* at 21:19–23:3. Agent Castillo testified that the only instructions given to the group between his initial encounter and their transportation was "to please stand up and to answer the questions." *Id.* at 23:10–16. According to Defendant, such circumstances show that "[n]o reasonable person stopped by Border Patrol under such classic illegal-entry circumstances—followed by an arrest that

bore all the hallmarks of being taken into custody—would *ever* believe they were 'free to leave after brief questioning.'" Open Br. at 17 (quoting *United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009)).

Contrary to Defendant's contentions, the Ninth Circuit "has repeatedly held that brief questioning near the border is a non-custodial *Terry* stop that does not trigger *Miranda*." *United States v. Gutierrez-Salinas*, 640 F. App'x 690, 694 (9th Cir. 2016). For example, in *United States v. Galindo-Gallegos*, the Ninth Circuit found that "[w]here officers apprehend a substantial number of suspects and question them in the open prior to arrest, this is ordinarily a *Terry* stop, not custodial questioning." 244 F.3d 728, 729–32 (9th Cir.), *as amended* (Apr. 25, 2001), *amended*, 255 F.3d 1154 (9th Cir. 2001). There, two Border Patrol agents apprehended fifteen to twenty suspected aliens roughly 1,800 feet north of the U.S.-Mexico border, ordered them to sit on the ground, and asked them "what country they were from and whether they had a legal right to be in the United States." *Id.* at 729. The Ninth Circuit affirmed the district court's denial of a motion to suppress the individuals' answers to the officers' questions, even though the detention "was not particularly 'public,' and the individuals questioned were not actually 'free to leave.'" *United States v. Medina-Villa*, 567 F.3d 507, 519 (9th Cir. 2009) (discussing *Galindo-Gallegos*, 244 F.3d 728)), *as amended* (June 23, 2009).

Likewise, in *Medina-Villa*, the Ninth Circuit found that Border Patrol agents had conducted a *Terry* stop even though the Border Patrol agent in that case "prevented [the suspected alien] from leaving the parking lot by blocking his car, approach[ed] it with his gun drawn, and interrogat[ed] him about his citizenship and immigration status." F.3d at 520; *see also United States v. Payan-Valenzuela*, No. CIV. 06CR2158 JM, 2007 WL 2712278, at *6 (S.D. Cal. Sept. 14, 2007) ("[N]either the use of drawn firearms in the approach of this vehicle, nor the initial use of handcuffs converted the stop into a custodial arrest or Fourth Amendment violation.").

/ / /

/ / /

Finally, in *United States v. Cervantes-Flores*, the Ninth Circuit determined that a Border Patrol agent had conducted a non-custodial *Terry* stop, which did not trigger *Miranda*, where the Border Patrol agent spotted a suspected alien walking along a highway, chased him roughly three-quarters of a mile into the desert, subdued and handcuffed him, and then asked him citizenship-related questions. 421 F.3d 825, 828 (9th Cir. 2005), *overruled on other grounds by Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). Notably, the Ninth Circuit found that handcuffing the suspected alien did not convert the *Terry* stop into a custodial arrest because "[w]here a suspect threatens physical danger or flight, officers may use handcuffs in the course of a *Terry* stop." *Id.* at 830.

Here, the circumstances preceding Agent Castillo's questioning did not convert the detention into a custodial arrest. Defendant was not placed in handcuffs or subdued, nor did Agent Castillo draw his weapon. Defendant was briefly transported from one location to another for questioning, and Defendant's relocation was justified by legitimate security concerns. *Supra* p. 15. Defendant has not cited, nor is the Court aware, of any binding authority holding that briefly transporting a group of suspected aliens to a more secure location converts an otherwise routine *Terry* stop into a custodial arrest triggering *Miranda*. Indeed, the Ninth Circuit cases discussed above stand for the proposition that Border Patrol agents may take far more intrusive precautions to minimize risk of flight or danger without converting a *Terry* stop into a custodial arrest triggering *Miranda*. *Cf. Galindo-Gallegos*, 244 F.3d at 735 (9th Cir.) (Paez, J., concurring) ("We have approved of *Terry* stops that include handcuffing the suspect during questioning, ordering a suspect to lie prone on the ground, or placing the suspect in a police vehicle." (internal citations omitted)).

For these reasons, the Court denies Defendant's appeal on this ground.

## V. Equal Protection and Due Process

Defendant argues that his prosecution via this District's "Streamline Court" violates equal protection and due process. Opening Br. at 3. The Ninth Circuit rejected this argument during the pendency of this appeal. *See United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir.), *cert. denied*, 142 S. Ct. 513 (2021) ("[W]e conclude that the

government's decision to prosecute first-time illegal entry separately from other petty offenses passes constitutional muster."). Accordingly, the Court denies Defendant's appeal on this ground.

## CONCLUSION

In light of the foregoing, the Court finds that the Complaint satisfied constitutional requirements; that Defendant was not entitled to a jury trial; that the Magistrate Judge did not err in finding that the Government proved Defendant's alienage beyond a reasonable doubt or in admitting Defendant's field statements; and that Defendant's prosecution did not violate either his equal protection or due process rights. Accordingly, the Court **AFFIRMS** the judgment of the Magistrate Judge.

**IT IS SO ORDERED.**

Dated: August 17, 2023

Hon. Janis L. Sammartino
United States District Judge